```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| A.D.L., a Minor, Individually and by and through his parent and natural guardian LISA A. LINDSTROM, and LISA A. LINDSTROM, individually,<br>    Plaintiffs,<br><br>    v.<br><br>CINNAMINSON TOWNSHIP BOARD OF EDUCATION,<br>    Defendant. | CIVIL NO. 12-1320(NLH)(AMD)<br><br>OPINION |

**APPEARANCES:**

DAVID G. C. ARNOLD
SUITE 106
920 MATSONFORD ROAD
WEST CONSHOHOCKEN, PA 19428
    On behalf of plaintiffs

FRANK P. CAVALLO, JR.
CAMERON R. MORGAN
PARKER MCCAY
THREE GREENTREE CENTRE
ROUTE 73 & GREENTREE ROAD
SUITE 401
MARLTON, NJ 08053
    On behalf of defendant

**HILLMAN**, District Judge

    This case concerns claims by a child and his mother that the child's school district violated his right to a free appropriate public education by not providing him with the appropriate reimbursement for the child's transportation to his educational placement. The parties have both moved for summary judgment in their favor. For the reasons expressed below, plaintiffs' motion will be granted, and defendant's motion will be denied.

## BACKGROUND

Plaintiff Lisa Lindstrom is the parent of A.D.L., a seventeen year-old child residing in Cinnaminson, New Jersey. A.D.L. has been multiply handicapped since birth, and is eligible for services under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §§ 1400 *et seq.* (IDEA). Defendant, the Cinnaminson Township Board of Education, is a public body charged with the conduct, supervision and management of Cinnaminson Township public schools, and is required to provide services to A.D.L. under the IDEA. See 20 U.S.C. § 1412(a)(1) (requiring states receiving federal education funding to provide every disabled child with a "free appropriate public education").

Since 2008, the parties have litigated in the New Jersey administrative courts over the proper free appropriate public education (FAPE) for A.D.L. In order to resolve several due process petitions filed by plaintiffs regarding A.D.L.'s educational placement, on October 19, 2010 the parties entered in a consent order, which was approved by an Administrative Law Judge. As part of the consent order, A.D.L. was provided a "one (1) year placement" at Concordia Learning Center, St. Joseph's School for the Blind, in Jersey City, New Jersey, beginning on July 1, 2010. As also part of the consent order, the school district was to reimburse plaintiffs for transportation at a per diem rate of $285.00.

Prior to the end of the 2010-2011 school year, Ms. Lindstrom and the school district decided that A.D.L. would continue at the Concordia Center for an extended school year program for the summer of 2011, and continue attending the school for the 2011-2012 school year. At that time, Ms. Lindstrom told the school district that the per diem transportation payment would have to be increased because it did not cover the entire cost of transportation, and because the vendors providing the transportation services were raising their rates. The school did not agree to a new per diem. In June 2011, plaintiffs filed a due process petition with the Office of Administrative Law ("OAL") seeking an increase in A.D.L.'s transportation per diem. While that issue was pending before the OAL, the parties decided to keep A.D.L. at the Concordia Center for the summer of 2012 and for the 2012-2013 school year. The matter was assigned to an ALJ different than the one who had approved the earlier settlement.

The school district filed a motion to dismiss plaintiffs' due process petition. An ALJ granted the school district's motion with regard to plaintiffs' request for an increased transportation per diem. The ALJ found that the consent order in the earlier matter locked-in the $285.00 transportation per diem for as long as A.D.L. attended the Concordia Center. Plaintiffs

then appealed the ALJ's decision to this Court,[1] and both parties have moved for summary judgment in their favor.

## DISCUSSION

### A. Jurisdiction

Because plaintiffs have brought this case pursuant to the IDEA, this Court has jurisdiction over plaintiffs' federal claims

---

[1] The school district argues that an alterative basis for relief is for the dismissal of plaintiffs' claims pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction. The school district argues that the enforcement of settlement agreements relating to educational services are strictly the domain of the state courts, and there is no subject matter jurisdiction in this Court between these non-diverse parties. The Court does not find the school district's alternative basis for relief to be availing, as plaintiffs are challenging the ALJ's dismissal of their due process petition pursuant to 20 U.S.C. § 1415(i)(2)(A), rather than seeking the enforcement of the consent order. Rather, the Consent Order is relevant here only because Defendant has asserted it as a defense to the subsequent due process claim.

The school district also argues that plaintiffs' claim is barred by res judicata principles because the issue of transportation costs has already been decided in plaintiffs' prior due process petitions. This argument would be persuasive if plaintiffs were seeking an increased reimbursement for the July 1, 2010 - July 1, 2011 time period, as it is undisputable that $285.00 was the agreed-upon per diem for that term. Plaintiffs' present claim is not barred by res judicata principles, however, because the legality of the consent order itself has not been previously litigated, nor could it have been. See Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 77 n.1 (1984) (explaining that the doctrine of res judicata "is often analyzed . . . to consist of two preclusion concepts: 'issue preclusion' and 'claim preclusion'": "Issue preclusion refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided. . . . . Claim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit.").

under 28 U.S.C. § 1331.

### B.  Summary Judgment Standard

Summary judgment is appropriate where the Court is satisfied that the materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, or interrogatory answers, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(a).

### C.  Analysis

The IDEA requires states receiving federal education funding to provide every disabled child with a "free appropriate public education."  20 U.S.C. § 1412(a)(1).  A FAPE "consists of educational instruction specially designed to meet the unique needs of the handicapped child, supported by such services as are necessary to permit the child 'to benefit' from the instruction." Ridley School Dist. v. M.R., 680 F.3d 260, 268-69 (3d Cir. 2012) (citation omitted).  Even though a state is not required to maximize the potential of every handicapped child, it must supply an education that provides "significant learning" and "meaningful benefit" to the child.  Id. (citations omitted).  When a state is unable to provide a FAPE, the state must reimburse the child's parents for the costs of attendance at a private school that is

5

able to provide a FAPE.  Id. (citation omitted).

Under the IDEA, any aggrieved party may "present a complaint . . . with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." 20 U.S.C. § 1415(b)(6).  The party may elect to have the complaint investigated by the state educational agency, see 34 C.F.R. § 300.661, or avail itself of an "impartial due process hearing," 20 U.S.C. § 1415(f).  Any party aggrieved by the outcome of the due process hearing "shall have the right to bring a civil action with respect to the complaint presented . . . in a district court of the United States, without regard to the amount in controversy."  Id. § 1415(i)(2)(A).  This action must be initiated within 90 days from the date of the hearing officer's decision.  Id. § 1415(i)(2)(B).  The district court is authorized to grant "such relief as the court determines is appropriate," including attorneys' fees, reimbursement for a private educational placement, and compensatory education.  See id. § 1415(i)(3)(B)(I).

Typically, a district court must review an IDEA decision by a state administrative agency under a modified *de novo* standard. L.E. v. Ramsey Bd. of Educ., 435 F.3d 384, 389 (3d Cir. 2006). Under this standard, a district court must afford "due weight" to the factual findings from the administrative proceedings, and

6

consider those findings to be "prima facie correct." Id. In contrast, the "due weight" to be afforded to the administrative proceedings is "not implicated with respect to issues of law, such as the proper interpretation of the [IDEA] and its requirements"; that is, the district court owes no deference to conclusions of law drawn by a state or local educational agency. In re Educational Assignment of Joseph R., 318 Fed. Appx. 113, 118, 2009 WL 755194, 3 (3d Cir. 2009) (citing Lillbask ex rel. Mauclaire v. Conn. Dep't of Educ., 397 F.3d 77, 82 (2d Cir. 2005); Alex R. v. Forrestville Valley Cmty. Unit Sch. Dist. # 221, 375 F.3d 603, 611 (7th Cir. 2004)); see also D.K. v. Abington School Dist., 696 F.3d 233, 243 (3d Cir. 2012) (citation omitted) (explaining that questions of law, such as the applicable statute of limitations, made by an administrative law judge are subject to plenary review by a district court).

In this case, plaintiffs argue that the ALJ erred because the plain language of the consent order demonstrates that its terms expired on July 1, 2011, and that the $285.00 transportation per diem could be modified after that date. The school district holds the same view as the ALJ - that the consent order unambiguously provides for a $285.00 transportation per diem for as long as A.D.L. attends the Concordia Center.

Contract interpretation begins by looking at the terms of the contract. In order to determine the meaning of the terms of

7

an agreement, the terms must be given their "plain and ordinary meaning." Kaufman v. Provident Life and Cas. Ins. Co., 828 F. Supp. 275, 282 (D.N.J. 1992), aff'd, 993 F.2d 877 (3d Cir. 1993). "The court makes the determination whether a contractual term is clear or ambiguous." Schor v. FMS Fin. Corp., 814 A.2d 1108, 1112 (N.J. Super. Ct. App. Div. 2002). "If the terms of the contract are susceptible to at least two reasonable alternative interpretations, an ambiguity exists. In that case, a court may look to extrinsic evidence as an aid to interpretation." Chubb Custom Ins. Co. v. Prudential Ins. Co. of Am., 195 N.J. 231, 238, 948 A.2d 1285 (2008) (citation omitted). "In the quest for the common intention of the parties to a contract, the court must consider the relations of the parties, the attendant circumstances, and the objects they were trying to attain." Nester v. O'Donnell, 693 A.2d 1214, 1220 (N.J. Super. Ct. App. Div. 1997) (citation omitted).

The relevant terms of the consent order entered into between plaintiffs and the school district are:

> 1(a). Respondent, Cinnaminson Township Board of Education, will provide A.L. with a one (1) year residential placement at the Concordia Learning Center, St. Joseph's School for the Blind. . . .
>
> 1(b). A.L.'s placement in the day school component and the residential component will commence simultaneously on July 1, 2010.
>
> 1(c). From the date of A.L.'s commencement at St. Joseph's and continuing for so long as he remains in that placement, Petitioner will assume responsibility for transportation to

>and from St. Joseph's during weekends and breaks in the school calendar.  The District will reimburse the Petitioner for transportation at a per diem rate of $285.00.
>
>3.   In the event that A.L. leaves the Concordia Learning Center, St. Joseph's School for the Blind placement prior to the one year anniversary of the residential placement because the IEP team determines that the placement is no longer appropriate to meet A.L.'s needs, then the settlement set forth in section 1 is void, and Petitioners, L.L. o/b/o A.L., will be entitled to either negotiate another settlement, or litigate A.L.'s claims for compensatory education as set forth in the Due Process matters which have been consolidated herein. . . .
>
>5.   Other Conditions; Agreement and Acceptance by Parent. Parent agrees to all terms of this Agreement as complete, full and final satisfaction of all claims of any nature against the District on behalf of herself or her child, A.L., for anything that has happened up until the date of the Agreement.  This release includes, but is not limited to, educational services of any kind, special education, transition services, related services, evaluation services, transportation and/or child study team services, and any and all claims and demands, for compensatory, incidental and punitive damages, or any other damages, costs and attorneys' fees that may arise under the Individuals with Disabilities Education Act . . . .

(Pl. Ex. 1.)

Based on these provisions, especially Section 1(c), the ALJ who presided over plaintiffs' subsequent due process petition concerning their request for increased transportation reimbursement found that the language of the earlier consent order was "plain and unambiguous" and "not limited to a set time period."  (Pl. Ex. 2.)  The ALJ also noted, "[T]he consent order in which the language is embodied was entered into within the last year and encompassed a comprehensive agreement between the parties on issues related to A.L.'s educational needs and

9

placement." (Id.)

Plaintiffs argue that the ALJ erred in her construction of the consent order. Plaintiffs contend that Section 1(a) demonstrates that the terms of the consent order, and all its provisions therein, were for one year. Thus, the provision regarding transportation expired, as did the entire consent order, on July 1, 2011. They also argue that because the consent order is silent as to A.D.L.'s placement at the Concordia Center beyond July 1, 2011, plaintiffs could not have agreed to transport A.D.L. to the Center after that date.

Plaintiffs further point to Section 3 to support their position that the consent order expired on July 1, 2011. They contend that the parties' concern was not A.D.L.'s placement beyond the one-year mark, but rather that A.D.L. would leave that placement before the end of the year. Additionally, plaintiffs argue that their claim for a new transportation per diem is not barred by the consent order because it did not accrue after July 1, 2010, and Section 5 of the consent order provides for a "full and final satisfaction of all claims of any nature against the District . . . for anything that has happened up until" July 1, 2010.

Finally, plaintiffs argue that programming under the IDEA is subject to annual review, 20 U.S.C.A. § 1414(d)(4) ("The local educational agency shall ensure that . . . the IEP Team reviews

10

the child's IEP periodically, but not less frequently than annually, to determine whether the annual goals for the child are being achieved."), and it would be inappropriate for a consent order concerning a one-year placement to bar a claim for future placements.

The school district's position on the interpretation of the consent order is as succinct as the ALJ's decision. To hold that all the terms of the consent order expired on July 1, 2011 would render meaningless Section 1(c), which provides that plaintiffs would assume responsibility for transportation to and from St. Joseph's during weekends and breaks "[f]rom the date of A.L.'s commencement at St. Joseph's and continuing for so long as he remains in that placement."

This Court agrees with plaintiffs' interpretation of the consent order, and finds that the language of the consent order is not ambiguous. The plain language of Section 1(a) of the consent order required the school district to pay for A.D.L.'s placement at the Concordia Center for one year, from July 1, 2010 until July 1, 2011. The consent order specifically addressed the consequences if A.D.L. left the Concordia Center prior to the one-year term (Section 3), and if he were to leave that placement, Section 1 of the consent order, including the provision for the transportation per diem, would be void. If, however, A.D.L. continued at the Concordia Center for the

11

duration of the July 2010 - July 2011 term, Section 1(c) memorialized that the school district would pay the $285.00 per diem for transportation "so long as he remains at that placement," with "that placement" being the one-year term referenced in Section 1(a).  Even though the consent order does not preclude the school district from continuing to pay for A.D.L.'s placement at the Concordia Center after July 1, 2011,[2] the plain language of the consent order, as well as the annual IEP review requirement of the IDEA, both clearly demonstrate that the $285.00 per diem for transportation was not to extend beyond A.D.L.'s one-year placement at the Concordia Center.

Under the basic precepts of contract construction, a document "should not be interpreted to render one of its terms meaningless." Cumberland County Improv. Auth. v. GSP Recycling Co., 818 A.2d 431, 438 (N.J. Super. Ct. App. Div.), cert. denied, 827 A.2d 289 (N.J. 2003).  Even though that precept does not require every phrase in a contract to be given its literal meaning, the contract must be read as a whole, and with common sense.  See id.  Throughout their state administrative law proceedings, including the drafting and signing of the consent order, both parties were represented by counsel.  If the school

---

[2]As it turned out, as part of the IEP Team's annual review of A.D.L.'s placement in 2011 and 2012, it was decided that A.D.L. would continue his placement at the Concordia Center continuously through the end of the 2013 school year.

district wished to lock-in the transportation per diem in the event that A.D.L.'s placement at the Concordia Center extended beyond July 1, 2011, it should have either insisted on a precise term in the consent order to represent that intention, or it should not have agreed to the existing term.  To not hold that the transportation per diem provision expired on July 1, 2011 would inappropriately, and in contradiction to common sense,[3] render meaningless the "for so long as he remains in that placement" language, when "that placement" is specified to be a one-year term.  Accordingly, plaintiffs have established their IDEA violation claim against the school district for its failure

---

[3] Defendant's interpretation of the agreement defies common sense and the normal course of most contractual agreements. Under Defendant's interpretation, the parties agreed to a one year placement and related provisions and then agreed that one aspect of that one year placement and one aspect alone - the transportation provision - would always be incorporated into and bind the parties in any separate agreement regarding placement. It were as if a party agreed to rent a parcel of real estate for a year at a set rate and simultaneously agree that such a rate of rent would govern any and all subsequent leases regardless of the condition of the property and other changes over time.  Such a provision would not only be unusual would almost always be addressed by clear, specific language that the parties intended to be bound by such an agreement in the future (e.g. option language) despite the ordinary expiration of the original agreement.  No such language is found in the Consent Order in this case.  The only provision that comes close (1.(c)) refers to "that placement", a clear and unambiguous reference to the one year placement described in 1.(a).

to negotiate a new transportation per diem for A.D.L.'s subsequent placements at the Concordia Center.

With regard to the determination of the amount plaintiffs should be reimbursed for transportation costs since July 1, 2011, in addition to other relief available to plaintiffs under the IDEA, see 20 U.S.C. § 1415(i)(3)(B)(I), the parties are directed to inform the Court, within 30 days, as to whether they: (1) request that the matter of the reimbursement of transportation costs and other relief be remanded to the ALJ for her determination; (2) request a hearing before this Court to determine such relief; or (3) present to the Court a proposed consent order memorializing the parties' agreement as to the reimbursement of transportation costs and other possible relief.

## CONCLUSION

For the reasons expressed above, the school district's motion for summary judgment shall be denied, and plaintiffs' motion for partial summary judgment shall be granted. Final judgment will be entered after the Court has considered the parties' supplemental submissions.

An appropriate Order will be issued.

Date: September 26, 2013      s/ Noel L. Hillman
At Camden, New Jersey      NOEL L. HILLMAN, U.S.D.J.

14